UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


NICOLE R. HENDERSON,

     Petitioner,

v.                                Case No. 3:19cv422-LC-HTC

SECRETARY of the DEPARTMENT
 OF CORRECTIONS,

     Respondent.[1]
_____/

## REPORT AND RECOMMENDATION

Petitioner, Nicole R. Henderson, proceeding *pro se*, filed a petition under 28 U.S.C. § 2254 challenging her conviction in the circuit court of Escambia County, Florida, 2012 CF 4865 for three counts of aggravated child abuse and raising one (1) claim of trial court error and ten (10) grounds of ineffective assistance of trial counsel. ECF Doc. 1. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the petition, the State's response (ECF Doc. 19), and

---

[1] When a petitioner is incarcerated in a Florida Department of Corrections facility and challenges her present physical confinement "the proper respondent is the Secretary of the Florida Department of Corrections." *Diaz v. Sec'y, DOC*, 2020 WL 708128, at *1 (M.D. Fla. Feb. 12, 2020) (citing *Rumsfield v. Padilla*, 542 U.S. 426, 435 (2004)). The clerk will be directed to terminate the Florida Attorney General as a Respondent.

Petitioner's Reply (ECF Doc. 23), the undersigned recommends the Petition be DENIED without an evidentiary hearing.

## I.    BACKGROUND

### A.    Offense and Conviction

In 2013, Petitioner was sentenced to a total of 40 years' incarceration after a jury found her guilty of three counts of "Aggravated Child Abuse – Willfully Tortures, Maliciously Punishes" in violation of Florida Statutes §§ 827.03(1) and 827.03(2)(b), for the abuse of her niece and nephews, aged 5,4 and 3. *See* Case No. 2012 CF 4865.

The pertinent facts of the case are as follows. In October of 2011, the children's mother died, and their father, Petitioner's brother, took custody of them. ECF Doc. 19-3 at 115-16. The children's maternal grandmother also helped take care of the three children. *Id.* at 116. In June, July and August of 2012, the children stayed with the grandmother, but, on August 19, 2012, they went back to the father. *Id.* at 116. They stayed with the father until September 3, 2012, when the father was arrested. *Id.* at 119.

When the grandmother attempted to get the children after the arrest, she discovered that the Petitioner had already picked them up and had them at her apartment. *Id.* at 121. The grandmother contacted Petitioner, who told her that the father (her brother) had told her that no one but Petitioner could get the kids. *Id.* The grandmother attempted to contact the kids after that but was prevented by

Petitioner. *Id.* 121-23. The father testified at trial that he did not tell his sister to get the kids or say that the grandmother could not get the kids. *Id.* at 127-30.

Three weeks later, on September 20, 2012, EMTs were called to Petitioner's apartment on a call that a toddler was having a seizure. ECF Doc. 19-2 at 151. When they arrived, they found the three-year-old unresponsive. He was taken to the hospital and died. *Id.* at 155 & 163-64. His death, however, was not linked to physical abuse.

The autopsy did reveal, however, extensive bruises and scratches from his neck to his ankles in various stages of healing, ECF Doc. 19-3 at 3, which were consistent with physical abuse, *Id.* at 26. Investigators then examined the other two children and determined they, too, had injuries consistent with child abuse. *Id.* at 27. After an investigation, Petitioner and her boyfriend, Cornelius Jones, were arrested and charged with aggravated child abuse.

As is relevant to petition, the evidence at trial consisted of the following. First, the EMTs who arrived at the house testified that the three-year-old child was lying alone in the middle of floor with no one attempting to render aid. The Petitioner seemed "calm for the situation", ECF Doc. 19-2 at 153, and her demeanor was "very calm, not at all hysterical like I would think it would be," *id.* at 64. Also, although she was told the child had to be rushed to the hospital and that she needed to accompany him, Petitioner left the ambulance and talked on her cellphone and had to be told to get back in to the ambulance. *Id.* at 155-56. One of EMTs also testified

that she changed her story as to how the child died. The EMT testified Petitioner told him at the scene that the boy had had a seizure after drinking toilet water, *id.* at 154, but then later told an officer at the hospital that the child had choked on a hotdog. *Id.* at 157.

An investigator with the Pensacola Police Department, Sharon Fortenberry also testified at trial. She said that after viewing the injuries to the three-year-old during the autopsy, she and child protective investigator, Alana Dodge, from Department of Children and Families ("DCF"), went to Petitioner's apartment and interviewed her. ECF Doc. 19-3 at 4. Petitioner and the other two children were there. *Id.* Fortenberry testified Petitioner admitted she was the "primary disciplinarian" and that she did spank the children with a belt – but only on the hands. *Id.* at 5. Petitioner also admitted to punishing the children by having them squat with their arms straight out with palms down, with phone books placed across their arms. *Id.* at 6.

Fortenberry testified the other two children were examined and interviewed and that they had injuries similar to the three-year-old's. *Id.* at 6-7. The children told her the injuries were caused by "their auntie." *Id.* at 7. Fortenberry also testified Petitioner was inconsistent with her statements about whether she had ever seen the injuries to the three-year-old. She first said she had not but later said that she had treated them with Neosporin. *Id.* at 14. Petitioner was arrested at the end of that interview.

Fortenberry also testified she attempted to interview Jones, the co-defendant, but he insisted that, although he did live there, he did not have any interaction with the children. *Id.* at 15. Fortenberry testified she later met with two witnesses who stated that Jones had beaten the three-year-old while they were at the apartment, and so she arrested Jones and re-interviewed him. Fortenberry stated Jones admitted the three-year-old had potty training accidents in his pants and was frequently disciplined because of it. Jones admitted to having the child squat with phone books across the arms. Jones also admitted that during a visit by the two witnesses, the child had an accident in his pants and was taken outside and hosed off. He stated the boy had not cried.

However, Jones admitted to Fortenberry the child "would sit on the toilet and slide his buttocks into the water and rub the scabs against the water." *Id.* at 17. After arresting Jones, Fortenberry conducted a search warrant of the house and retrieved two belts the 5-year-old victim told Fortenberry were used to beat them. *Id.* at 18.

DCF Investigator Dodge testified the deceased three-year-old had "multiple linear marks all over his chest, his legs, his thighs, his stomach. The child was covered in linear marks as well and he had some that had been bleeding from his bottom." *Id*. at 26. The 4-year-old brother had "bruising, linear marks on his chest, his back, his thighs, and his butt. They were in various stages" of healing. *Id.* at 27. The 5-year-old sister "had some on her bottom and on her back." *Id.* Dodge testified

surviving children told her "the aunt, Nicole Henderson, had hit them with a belt." *Id.* at 28.

The 5-year-old child also testified the children would be punished by "getting whooped and stand[ing] in the corner." *Id.* at 46. She stated Petitioner used a belt to whip them, and the three-year-old got the most whippings with the belt and he was beaten on his bare body with the belt rather than over his cloths. *Id.* at 47-48. The three-year-old was beaten usually because he had potty-training accidents, and the Petitioner would get angry and "whoop him." *Id.* at 50-51. When the 5-year-old bathed the three-year-old, she saw "boo-boos" and blood "everywhere" on him. *Id.* at 51. She also testified the three-year-old did not sleep in a bed. Instead, "he slept in the middle of the hall on a towel and he was naked." *Id.* at 53 & 55. The 5-year-old testified neither her father nor her grandmother ever whipped the children and that they did not have injuries when they arrived at the Petitioner's house. *Id.* at 55-56.

The 4-year-old child testified that, when he got in trouble, he had to do squats with phone books and that he got whipped with a belt. *Id.* at 65-66. He also stated he saw bumps, "boo-boos" and blood on his little brother everywhere, particularly on his buttocks. *Id.* at 67. When asked how those injuries got there, he answered that they were from "Auntie Nicole . . . doing whippings on him." *Id.* at 67-68.

Next, Andrea Rogers, a friend of Petitioner and Jones testified that, during Rogers's visit to their apartment, Jones and Petitioner each beat the three-year-old

with a belt.  ECF Doc. 19-3 at 78.  While Rogers was at the apartment the three-year-old was punished for defecating in his pants.  The child was hosed off outside in cold weather and came in naked and "shaking real cold." *Id.* at 83.  Petitioner and Jones then took the child into a back room and Rogers heard a belt "like he was getting a whipping." *Id.*  After about five minutes, Petitioner returned to the main room of the apartment with the three-year-old and, holding his arm up, and stated to Rogers "Watch y'all, he won't even cry."  She then hit him three more times across his bare bottom with the belt and the child did not cry.  Petitioner then made the naked child squat in the hallway with the phone books across his arms while he was wet and shivering. *Id.* at 85.

Later, while Petitioner was folding clothes, Jones took the child back to the room and whipped him with the belt.  Petitioner commented on Jones whipping the boy but took no action to stop him.  Eventually, Petitioner left Rogers at the apartment for a while, during which time Jones took the boy back to the room "six or seven times" and whipped him. *Id.* at 92.  On one occasion, Rogers came into the room and observed Jones holding a belt and being out of breath from exerting himself. *Id.* at 91.

Eventually, the child was allowed to come back to the main room and was having trouble putting on his underwear.  Rogers approached to help the child and witnessed multiple sores on the boy, including a "bubble"-like welt on his buttocks. *Id.* at 95.  Before she could help the boy with his underwear, Jones stepped in

between her and the boy and took him, which Rogers testified gave her the "impression he was blocking the view on purpose." *Id.* at 96. Rogers testified she was so disturbed by what she witnessed that, when she returned home, she called her mother, who immediately called DCF. *Id.* at 99. Rogers, however, who had been driven to the apartment by Petitioner, was unable to tell DCF where the apartment was located. A week later, Rogers heard that the three-year-old had died, and DCF came out to her house to take a statement. *Id.*

The grandmother and the father of the children testified they had never beaten the children with belts, ECF Doc. 19-3 at 117 & 131, never left them with anyone who did so, *id.* at 117-18 & 132, and never observed the injuries on the children before they stayed with the Petitioner, *id.* at 118 & 130. The grandmother testified the three-year-old was being potty-trained and was used to wearing pull-ups and using a miniature potty. *Id.* at 122.

The final witness was Dr. Reese, a pediatrician who specialized in child abuse. He testified the injuries to the three children were excessive of what would be expected for children that age, *id.* at 147 & 155, and were "inflicted" rather than "accidental." *Id.* at 147, 149 & 152. He also testified the injuries were consistent with being whipped with an electrical cord, *id.* at 148, and with a belt, *id.* at 153. While Dr. Reese could not with certainty specify when the injuries occurred, he did testify they appeared to be "fresh." ECF Doc. 19-3 at 162-63. He was then asked,

"And the loop marks could easily have been inflicted within a 17-day period?", and he answered, "Yes." *Id.* at 163.

On May 31, 2013, Petitioner was convicted of aggravated child abuse of all three children and sentenced immediately after trial to thirty (30) years as to Count 1 (involving the beating of the three-year-old) and five years on each of Counts 2 and 3 (involving each of the other two children). ECF Doc. 19-3 at 109. The five-year sentences were consecutive to each other and the thirty-year sentence.

Also, prior to trial, because Petitioner committed the offenses while she was on probation, the court held a violation of probation hearing on March 7, 2013. ECF Doc. 19-1 at 17. The same judge presided over both proceedings and also decided the subsequent post-conviction motion. The court sentenced Petitioner to 20 years' incarceration for the violation of probation, to run concurrently with the other sentences, making the total imprisonment forty (40) years. *Id.* at 119.

## B.    Postconviction Procedural History and Timeliness

Petitioner appealed her judgment and sentence to the First District Court of Appeal ("First DCA"), Case No. 1D13-2836, raising a single argument, that the trial court erred in denying the motion *in limine* to exclude testimony and evidence referring to the death of the three-year-old because his death was not related to the charged offense of aggravated child abuse. ECF Doc. 19-8 at 2. The First DCA affirmed, *per curiam* and without written opinion on July 7, 2014. ECF Doc. 19-11 at 3. Petitioner did not seek review in the Florida or United States Supreme Court,

ECF Doc. 1 at 2, thus the conviction became final ninety (90) days later. *See Bond v. Moore*, 309 F.3d 770, 773–74 (11th Cir. 2002) (holding a state prisoner's conviction becomes final when the U.S. Supreme Court denies certiorari, issues a decision on the merits, or when the 90-day period to file a petition for certiorari expires); *Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006) (holding that the 90-day period runs from the date of entry of judgment sought to be reviewed, rather than from the issuance of the mandate). Thus, Petitioner's judgment became final on October 6, 2014.[2]

On August 28, 2015, Petitioner filed a *pro se* motion for post-conviction relief,[3] ECF Doc. 19-12 at 15, which remained continuously pending, through several amendments and appeal, until the First DCA affirmed without written opinion and issued its mandate in Case No. 1D18-1208 on December 6, 2018. ECF Doc. 19-21 at 1.

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act Of 1996 ("AEDPA"), a § 2254 petition must be filed within one-year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such

---

[2] Because that 90-day period fell on a Sunday, October 5, 2014, the finality date was extended to Monday, October 6, 2014. *See King v. Warden*, 665 F. App'x 785, 786 (11th Cir. 2016).

[3] Although Respondent states the motion was filed on September 13, 2015, that is incorrect. September 13 is when the motion was docketed. It was delivered to prison mail officials, however, on August 28. ECF Doc. 19-12 at 7, 45.

review." 28 U.S.C. § 2244(d)(1)(A).[4]  In this case, the AEDPA period start running

on October 7, 2014, ran for 325 days, was tolled by the filing of the Rule 3.850

motion on August 28 until December 6, 2018, and ran for only another 33 days when

Petitioner delivered the instant federal petition to prison mail officials on January 9,

2019.  Therefore, the petition is timely.

## II.    LEGAL STANDARDS

### A.    The Standard of Review Under the AEDPA

Under that AEDPA, relief may only be granted on a claim adjudicated on the

merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  *White*

*v. Woodall*, 575 U.S. 415, 419 (2014).  A state court's violation of state law is not

enough to show that a petitioner is in custody in violation of the "Constitution or

laws or treaties of the United States."  28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562

U.S. 1, 16 (2010).

---

[4] Although there are other "trigger" dates under the AEDPA, none of those apply here.  *See* 28
U.S.C. § 2244(d)(1)(B)-(D)

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. *White*, 575 U.S. at 419; *Casey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the

state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018). Also, when a state appellate court upholds a ruling without written opinion, which was what the First DCA did here with regard to its affirmation of the circuit court's denial of the 3.580 motion, this Court should "look through" the unexplained decision of the First DCA to the circuit court's explanation -- the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Finally, when reviewing a claim under 28 U.S.C. § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

## B.    Ineffective Assistant of Trial Counsel ("IATC") Claims

Except for one ground, Petitioner's grounds for relief are premised on ineffective assistance of trial counsel. An IATC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists

that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III.    DISCUSSION

Before addressing the specific grounds for relief, the undersigned will first address the Respondent's argument that all grounds for relief except for Ground One (procedurally defaulted on other grounds) and Ground Three are procedurally defaulted because they were not raised in the appeal of the circuit court's order denying her amended 3.850 motion.

"In Florida, a defendant seeking to collaterally attack his criminal judgment based on a claim that he was denied his constitutional right to effective assistance of counsel must file a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, and an appeal therefrom." *Allen v. Inch*, No. 3:20-CV-5989-MCR-MJF, 2021 WL 2169481, at *2 (N.D. Fla. May 14, 2021), *report and recommendation adopted sub nom. JONATHAN TOBIAS ALLEN, Petitioner, v. MARK S. INCH, Respondent.*, No. 3:20CV5989-MCR-MJF, 2021 WL 2165210 (N.D. Fla. May 27, 2021) (citing Fla. R. Crim. P. 3.850; Fla. R. App. P. 9.141; *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979)).

The Respondent argues "[i]n her appellate brief in the 3.850 proceeding, Petitioner only raises that she was not permitted to file another amended motion under *Spera v. State*, 971 So. 2d 754 (2007); she does not claim any error based on the court's finding the claim was facially insufficient." ECF Doc. 19 at 46. The Court disagrees, however. Reading the Petitioner's appellate brief leniently, as the Court must, the Court finds that Petitioner, while perhaps not artfully, raised the denial of the merits of the amended motion in addition to the *Spera* claim relating to whether she should have been allowed to amend again.

First, it is important to note, as shown above, the circuit court not only found the 3.850 motion facially insufficient, it also went further and examined the merits of each claim. Second, in Petitioner's Notice of Appeal, she indicated "the nature of the order" being appealed was "ORDER DENYING DEFENDANT'S PRO SE

AMENDED MOTION FOR POST CONVICTION RELIEF." ECF Doc. 19-16 at 48. She did not limit the scope of her appeal to the *Spera* issue. Third, in her appellate brief, Petitioner stated the issue as whether "Trial Court Erred in Denying the Appellant's Post Conviction [Motion] And Not Allowing A Leave to Amend In Accordance with Spera." ECF Doc. 19-17 at 2. She also stated, "The Appellant asserts that the trial court erred in denying her post-conviction motion in its entirety and not granting her an additional leave to amend the still insufficient but meritorious grounds." *Id.* at 6.

Thus, the undersigned finds that Petitioner did appeal not only the denial of an opportunity to amend her 3.850 motion, but the denial of the motion itself and will address, as to each ground, why it fails on the merits or for other reasons.

## A. Ground One: Trial court error in denying motion *in limine* to exclude testimony and evidence referring to the death of M.H. age three.

At a May 28, 2013, pretrial hearing, co-defendant Jones moved to exclude autopsy photos or any discussion of the 3-year old child's death. ECF Doc. 19-7 at 16-17. Counsel for Petitioner joined in the motion. *Id.* at 16. Counsel for Jones pointed out there had never been a determination of the child's cause of death and argued evidence that the three-year-old child died would be unfairly prejudicial because "a jury is going to say, there is a dead child and somebody is going to pay for that." *Id.* at 15.

The prosecutor explained, however, that the State did not intend to offer "blatant autopsy photos" but just photos of the injuries, limited to the back and front abdomen. *Id.* at 16. Also, the prosecutor explained the State would not attempt to link the cause of death to the beatings but merely intended to discuss the death to explain how the injuries were discovered and to set a timeline of the events in the case. *Id.* at 16-17. The trial court denied the motion, finding that, given the limitations on the use of the evidence, any prejudice did not outweigh the evidence probative value. ECF Doc. 19-7 at 21 & 29. Petitioner takes issue with that decision.

Respondent argues (1) Petitioner failed to exhaust this claim by failing to preserve it during trial and by failing to raise it as a federal issue on appeal and (2) regardless, the argument fails because the admission of the evidence did not render Petitioner's trial fundamentally unfair. The undersigned agrees as to both arguments. Additionally, the undersigned finds the claim is procedurally defaulted.

### 1.    Failure to Exhaust

Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim as based on federal law in each appropriate state court, thereby alerting that

court to the federal nature of the claim. *Duncan*, *supra*, at 365-366; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

"It is not, however, 'sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made.' The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015) (quoting *Kelley v. Sec'y for Dep't of Corr.,* 377 F.3d 1317, 1344 (11th Cir.2004)).

Petitioner has not done so here. In her appellate brief, she did not include a federal source of law on which she relies or label her claim as a federal one. ECF Doc. 19-8. She cited only eight (8) Florida cases and no federal law at all. *Id.* at 3. In the conclusion of her appellate brief, she argued, "[b]ased on the foregoing arguments and authorities in this brief, Appellant is entitled to reversal of her trial and to a new trial." *Id.* at 38. Therefore, she relied only upon Florida, not federal, law in presenting her arguments to the state appellate courts and, as a result, failed to fairly present her claim as a federal constitutional claim to the State courts.

2.    <u>Procedural Default</u>

Under Florida law, to properly preserve an adverse ruling on a motion *in limine*, an objection must be made. Failure to object when the disputed evidence is introduced waives the issue for appellate review; the denial of the motion is not

sufficient.  *See Feller v. State*, 637 So.2d 911, 914 (Fla. 1994) (citing *Phillips v. State*, 476 So.2d 194, 196 (Fla. 1985).  In other words, the filing and denial of the motion, alone, is not sufficient to preserve the issue for appeal.

As the Respondent points out, Petitioner failed to make any arguments specially concerning the autopsy photographs and therefore waived the issue on appeal.  ECF Doc. 19 at 21; ECF Doc. 19-2 at 132-34, 140-43.  No objections were lodged during the State's opening argument, which mentioned the death of the child. Nor did Petitioner renew an objection to the introduction of testimony that the child was deceased or of the autopsy photographs when Firefighters Johnson and Dane, Investigator Fortenberry or Ms. Dodge testified.  ECF Doc. 19-2 at 150-68 (Johnson and Dane); ECF Doc. 19-3 at 1-38 (Fortenberry and Dodge).  Thus, Petitioner failed to preserve the issue for appeal under Florida law.  *See, e.g., Feller*, 637 So.2d at 914.

The State argued on appeal that Petitioner failed to preserve this issue for appeal.  ECF Doc. 19-9 at 16.  Although the appellate court did not issue a written opinion, ECF Doc. 19-11 at 3, a federal district court on habeas review should presume the appellate court applied the procedural rule in denying relief.  *See Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir. 1989) ("This circuit to a point has presumed that when a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default.").  Thus, Petitioner's claim is also

barred because the state appellate court rejected it on the independent and adequate state procedural ground that she failed to preserve the issue for appeal. *See Coleman v. Thompson*, 501 U.S. 722, 734–35 & n.1 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.").

A petitioner may obtain federal habeas review of a procedurally defaulted claim only upon a showing of cause and prejudice or that review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495 96 (1986). To show prejudice, a petitioner must demonstrate not only that an error at the trial created the possibility of prejudice but that the error worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimension. *United States v. Frady*, 456 U.S. 152 (1982). In other words, a petitioner must show at least a reasonable probability of a different outcome. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

Likewise, a fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet the "fundamental miscarriage of justice" exception, Petitioner must show constitutional error coupled with "new reliable evidence — whether...exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

In her Reply, Petitioner fails to provide any facts showing that she was actually innocent or that there has been a fundamental carriage of justice. Instead, she simply argues, in conclusory fashion, that "Petitioner avers that no reasonable juror would have found her guilty" and that "the substance of her claims raise issues of actual innocence." ECF Doc. 23 at 2. "Such generalized allegations are insufficient in habeas cases. Rule 2(c) of the Rules Governing Section 2254 Cases requires petitioners to 'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'" *Hittson v. GDCP Warden*, 759 F.3d 1210, 1265 n.62 (11th Cir. 2014). Thus, Petitioner has not established either cause and prejudice or a fundamental miscarriage of justice.

### 3.    Petitioner's claims fail on the merits

Even if the Court were to consider Ground One on the merits, the claim fails because Petitioner cannot show the admission of autopsy photographs or the testimony regarding the 3-year old's death rendered her trial fundamentally unfair.

"[F]ederal habeas courts do not review State evidentiary rulings unless the alleged error is of such magnitude as to render the trial fundamentally unfair." *Harrison v. Inch*, No. 3:18CV2100-RV/CAS, 2019 WL 2077858, at *5 (N.D. Fla. Apr. 4, 2019), *report and recommendation adopted*, No. 3:18CV2100-RV/CAS, 2019 WL 2076399 (N.D. Fla. May 10, 2019) (citing *Estelle v. McGuire*, 502 U.S.

62, 71 (1991)). "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983); *accord, e.g.*, *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992).

Factors that courts consider in determining whether admission of evidence renders a trial fundamentally unfair include whether "the evidence is close," the "manner in which the complained of evidence was presented," whether "the evidence was highly persuasive," whether the evidence "was used in closing argument," and "whether the defense was able to effectively counter" the evidence. *Perkins v. Dunn*, 2019 WL 4538737, at *33 (N.D. Ala. Sept. 19, 2019) (citing *Maurer v. Dep't of Corr.*, 32 F.3d 1286, 1289 (8th Cir. 1994)).  All these factors weigh in favor of a finding that the admission of the evidence did not render the trial fundamentally unfair.

First, the defense was able -- right from the start -- to effectively counter the evidence.  During jury selection, counsel for co-defendant Jones brought up the subject of the child's death and told prospective jurors "all of the parties would agree that there will be no evidence offered to suggest that either Mr. Jones or Ms. Henderson either caused or contributed to the death of the child."  ECF Doc. 19-2 at 69.  Counsel also asked the prospective jurors whether any "feels like, wow, you know, the child died, and they say it didn't have anything to do with the offense conduct, but I just can't get my head around that. I just don't know if I could listen

to the evidence in this case knowing that the child had died for whatever reason, for whatever reason?" *Id.*  Five prospective jurors responded affirmatively (Dixon, Bright, Warner, Johnson, and Orf), *id.* at 69-72, none of whom were jurors in the case. *See* ECF Doc. 19-5 at 17-19 (polling of the jury after the verdict).

Second, the evidence was not presented in a manner which tended to prejudice the jury.  That is, consistent with the State's representation to the court, it did not introduce gratuitous pictures of the autopsy and did not link the child's death to the injuries caused by Petitioner's abuse. *See* Doc. 19-7 at 15-17.  Instead, the State used the evidence to show "the entire context out of which the charged crimes occurred," including how the injuries were discovered, how the investigation originated and to provide a foundation for the testimony concerning the extent and analysis of the injuries to the child. *Jones v. Sec'y, Dep't of Corr.*, 2020 WL 5628970, at *7 (M.D. Fla. Sept. 21, 2020), *appeal dismissed*, No. 20-13827-E, 2021 WL 150421 (11th Cir. Jan. 4, 2021).

Third, although the death was mentioned throughout the trial and in opening and closing statements, the evidence was not made a "feature of the case." *Jones*, 2021 WL 150421 at *7.  Instead, the child's death was inextricably intertwined with the witnesses' testimonies of how the injuries and abuse was discovered by authorities.  The rules against admission of evidence of "other bad acts"[5] do not

---

[5] See Fla. Stat. § 90.404(2)(a) and Fed. R. Evid. 404(b).

exclude evidence that is "inextricably intertwined" with evidence of the charged offense.  *United States v. McNair*, 605 F.3d 1152, 1203 (11th Cir. 2010) (citing *United States v. Wright,* 392 F.3d 1269, 1276 (11th Cir. 2004); *United States v. Aleman,* 592 F.2d 881, 885 (5th Cir. 1979)).  That is, the rules do not exclude evidence that is "linked in time and circumstances with the charged crime" or that "forms an integral and natural part of an account of the crime to complete the story of the crime for the jury."  *Wright,* 392 F.3d at 1276 (quotations omitted); *United States v. Edouard,* 485 F.3d 1324, 1344 (11th Cir.2007).

Fourth, Petitioner's counsel reminded the jury during closing argument that, while the pictures of the child were "disturbing", the fact of his death "is not what we're here about today."  ECF Doc. 19-4 at 44-45.  Thus, Petitioner's counsel countered any prejudicial impact of testimony about the child's death.

Finally, the evidence of guilt in this case was overwhelming regardless of any mention of the child's death.  The two surviving children testified their injuries were inflicted by whippings from Petitioner and denied anyone else had whipped them; Petitioner admitted to investigators she was the primary disciplinarian and sometimes used a belt on the children; Petitioner initially said she did not observe any injuries on the three-year-old but later changed her story and told investigators she treated the injuries with Neosporin; the friend who visited Petitioner's apartment testified she witnessed Petitioner and her co-defendant repeatedly whip the three-year-old and observed injuries on the three-year-old; the friend also testified

Petitioner knew, and demonstrated, the child had become so inured to the beatings he would no longer cry out; the previous caregivers (the father and the grandmother) testified they did not whip the children and the children corroborated that testimony; and the pediatrician – relying upon photographic evidence shown to the jury -- testified the wounds were intentionally inflicted, rather than accidental, were extreme and excessive, and were inflicted within the last 17 days.

Petitioner is therefore not entitled to habeas relief on Ground One.

## B.    Ground Two: IATC for Failing to Move to Hold Violation of Probation ("VOP") Hearing Until After Trial

Petitioner argues "Counsel neglected to request that the VOP hearing be conducted following the trial in the criminal case, and thus caused the judge to consider this highly prejudicial evidence in the advance of trial." ECF Doc. 1 at 8. As more fully set out in the amended 3.850 motion, Petitioner believes allowing the VOP hearing to occur prior to trial was prejudicial because there were multiple instances of hearsay testimony which were admitted at the VOP hearing due to the more lenient evidentiary standards that apply in such a hearing. Thus, the trial judge was unfairly influenced by this testimony later, when imposing the sentence. ECF Doc. 19-12 at 98-100.

The circuit court applied *Strickland* and denied relief on this ground because "Defendant's allegation that she would have received a lesser sentence if the VOP hearing had been conducted after the trial is conclusory and speculative" and there

"is also no indication that if counsel had made the request for the VOP hearing to be conducted after trial that the request would have been granted." ECF Doc. 19-13 at 38-39. The court's determination was not contrary to law or an unreasonable application of the facts.

Petitioner offers nothing but conjecture to argue she was prejudiced. The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncrasies of the particular decisionmaker, such as unusual propensities toward harshness or leniency. *Strickland*, 466 U.S. at 694–95. Contrary to that principle, Petitioner's argument relies upon an assumption that the sentencing judge was biased by the VOP hearing.

Also, almost all the evidence at the VOP hearing was admitted at the trial, and, as stated above, the same judge who proceeded over the trial also proceeded over the VOP hearing. Thus, whether the VOP hearing was conducted before or after the trial would not have made a difference. The same judge also conducted the sentencing hearing and heard mitigating evidence before pronouncing sentence.

Petitioner also cannot show that counsel's performance was defective because she cannot show the Court would have granted such a motion, had counsel moved to delay the VOP hearing. As the Respondent points out, state courts control their own dockets, and Petitioner has not shown the court would have granted a request to delay the VOP hearing. *See Knowles v. Mirzayance*, 556 U.S. 111, 126-27 (2009)

(the law does not require counsel to raise every available non-frivolous defense or request).  Petitioner is not entitled to habeas relief on Ground Two.

### C.    Ground Three: IATC for Failing to Request Individual Voir Dire on Pretrial Publicity

Petitioner argues her case was highly publicized in news coverage which implied her guilt of not only the abuse but also in causing the death of the three-year-old.  She argues trial counsel should have requested individual voir dire on pretrial publicity.  ECF Doc. 1 at 9.  The undersigned agrees with Respondent that Petitioner defaulted this claim by failing to raise it in any state court proceeding.  Regardless, the claim would fail on the merits as well under *Strickland*.

Petitioner failed to raise this claim at trial, in her 3.850 motion, or on appeal, and she is not able to return to state court and now raise them.  An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See O'Sullivan*, 526 U.S. at 839–40, 848; *Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This alone is reason to deny this claim.

Additionally, even if the claim was considered on the merits, it would fail.  When deciding the question of whether a defendant was denied a fair trial due to an impartial jury caused by pretrial publicity, a court must consider any presumed and actual prejudice to the defendant.  *See Coleman v. Zant*, 708 F.2d 541, 544-45 (11th Cir. 1983); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000).  As the Eleventh

Circuit has stated: "where a petitioner adduces evidence of inflammatory, prejudicial pretrial publicity that so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community, '[jury] prejudice is presumed and there is no further duty to establish bias.'" *Coleman,* 708 F. 2d at 544 (citing *Mayola v. Alabama*, 623 F.2d 992, 997 (5th Cir. 1980)). The presumptive prejudice standard is "rarely" applicable and is reserved for an "extreme situation;" thus the petitioner's burden is an extremely heavy one. *Coleman v. Kemp*, 778 F.2d 1487, 1537 (11th Cir. 1985) (citing *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 554 (1976)).

Actual prejudice exists when two prerequisites are satisfied: First, it must be shown that one or more jurors who decided the case entertained an opinion, before hearing the evidence adduced at trial, that the defendant was guilty. Second, these jurors, it must be determined, could not have laid aside these preformed opinions and "render[ed] a verdict based on the evidence presented in court." *Coleman*, 708 F.2d at 544 (citing and quoting *Irvin*, 366 U.S. at 723).

Based on these high standards for establishing prejudice from pretrial publicity, Petitioner fails to satisfy either prong of *Strickland*. First, counsel's decision to not pursue individual voir dire on pretrial publicity was not deficient performance because the Court had already inquired about pretrial publicity during voir dire. Specifically, the judge asked, "Do any of you know anything about this case either personally, by rumor, or by reading or hearing anything in the news media

about this case?" ECF Doc. 19-2 at 15. Only two potential jurors answered yes, and they were not selected to serve. *Compare* jurors listed *id.* at 15-16 to ECF Doc. 19-5 at 17-19 (polling of the jury after the verdict). Since this question was asked and answered, individual voir dire repeating the question is not likely to have added anything, and counsel was not deficient for failing to seek it. *See Knowles v. Mirzayance*, 556 U.S. 111, 126-27 (2009) (the law does not require counsel to raise every available non-frivolous defense); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious objection).

Moreover, Petitioner cannot show prejudice under *Strickland*. She has not offered any allegations tending to show "inflammatory, prejudicial pretrial publicity that so pervades or saturates the community as to render virtually impossible a fair trial" or any allegation of actual bias on the part of any juror. As Respondent points out, Petitioner does not identify a single juror who was swayed by pretrial publicity or was impartial. *Heath v. Jones,* 941 F.2d 1126, 1133 (11th Cir. 1991) (holding that habeas petitioner can only raise the trial court's denials of challenges for cause of those venire members who eventually sit on the jury), *cert. denied,* 502 U.S. 1077 (1992). Thus, Petitioner has not shown a reasonable probability that, but for counsel's decision not to pursue individual voir dire, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. Petitioner is not entitled to habeas relief on Ground Three.

### D. Ground Four: IATC for Failing to Investigate and Call DCF Investigator Cheryl Shukur as a Witness

Petitioner argues counsel failed to adequately investigate, prepare, interview, depose, or call a crucial defense witness, Cheryl Shukur, to testify at trial. Petitioner claims she advised her attorney Shukur was the caseworker for the Department of Children and Families assigned to a case of neglect/abuse of the children involving their father which was open at the time of the father's arrest but was closed when the children were placed with Petitioner.

As argued more fully in Petitioner's state-court motion, ECF Doc. 19-12 at 68, Shukur's testimony would rebut the testimony of child protective investigator Dodge, who testified at VOP hearing and at trial. Petitioner claims she asked counsel to solicit testimony from Shukur as to the nature of the open case against the father of the children and to establish he or his live-in girlfriend could have inflicted the injuries to the children, specifically the three-year-old. Petitioner argues this testimony was critical because the Petitioner denied inflicting the injury to the three-year-old, the age of the injury was in question and, according to Petitioner, not supported by any medical evidence. Thus, Shukur's testimony would have supported Petitioner's theory of defense that someone else caused the injuries and that the children's father had the opportunity and the propensity to do so. ECF Doc. 19-12 at 68.

The state court denied relief on this ground based on a finding of lack of prejudice.  Namely, the court determined "[t]here would have been no need to 'rebut' Ms. Dodge's VOP hearing testimony during Defendant's trial because the VOP testimony was never before the jury for consideration."  ECF Doc. 19-13 at 39-41. Thus, "[a]ttempting to rebut Ms. Dodge's VOP hearing testimony with Ms. Shukur's proposed trial testimony would not have affected the results of Defendant's trial." *Id.*

As to rebutting Dodge's trial testimony, the court determined that "evidence was already admitted at trial that supported Defendant's theory that somebody else inflicted the injuries upon the children."  *Id.*  Thus, "[a]ny testimony Ms. Shukur could have offered regarding the children being in their father's care before the children were in Defendant's care would have been cumulative to Ms. Dodge's trial testimony."  *Id.*

The state court's rejection of this claim was not contrary to or an unreasonable application of *Strickland* and its progeny.  Decisions whether to call a particular witness are generally questions of trial strategy not amounting to ineffective assistance of counsel.  *See generally Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision and it is one that [the courts] will seldom, if ever, second guess.").  Thus, complaints about uncalled witnesses are disfavored.  *Sanders v. United States*, 314 F. App'x 212, 213 (11th Cir. 2008).  "This is especially true

because allegations of what a witness would have testified are largely speculative. Speculation about what witnesses could have said is not enough to establish the prejudice prong of Strickland." *Jones v. McNeil*, WL 1758740, at *6 (S.D. Fla. Jun. 22, 2009).

"[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Moreover, "the decision not to call witnesses that would have provided cumulative testimony was not so patently unreasonable that no competent attorney would have made that decision." *Gadson v. Sec'y, Fla. Dep't of Corr.*, 2020 WL 6827670, at *12 (M.D. Fla. Nov. 20, 2020) (citing *Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1157 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 2681 (2018)).

Petitioner has not shown that counsel's strategic decision to not call Shukur as a witness was deficient performance. As the state court concluded, Shukur's testimony would have been cumulative to Dodge's for the purposes of Petitioner's theory of the case. Petitioner's defense counsel through his examination of Dodge already managed to admit evidence at trial that supported Defendant's theory that somebody else had access to the children and opportunity to inflict the injuries. Petitioner does not appear to contest Shukur's testimony would have been

cumulative to Dodge's. In Petitioner's Reply, she acknowledges Dodge also referenced an open investigation involving the father and says "[b]oth witnesses would have demonstrated [the father]'s propensity to commit these crimes." ECF Doc. 23 at 10.

"[T]he decision not to call witnesses that would have provided cumulative testimony was not so patently unreasonable that no competent attorney would have made that decision." *Gadson v. Sec'y, Fla. Dep't of Corr.*, 2020 WL 6827670, at *12 (M.D. Fla. Nov. 20, 2020) (citing *Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1157 (11th Cir. 2017), cert. denied, 138 S. Ct. 2681 (2018)). Also, Shukur's purported testimony that the children appeared not to have any visible marks on them when she visited the father's home would have damaged Petitioner's defense.

Finally, even if counsel had erred in not calling Shukur, Petitioner has not shown prejudice under *Strickland* -- that a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). As discussed with regard to Ground One, the evidence against Petitioner was overwhelming, and Petitioner has not shown that adding Shukur's testimony would have affected the outcome.

For all these reasons, Petitioner is not entitled to habeas relief on Ground Four.

**E.    Ground Five: IATC for Failing to Properly Cross-Examine M.H. Age Five**

Petitioner claims trial counsel did not provide adequate assistance during trial because she failed to impeach M.H., age 5, with her prior inconsistent statement made during the VOP hearing.  At the VOP hearing, the child testified she and her younger brother had been whipped but the three-year-old had gotten the most whippings.  The prosecutor asked M.H., "And who whipped him the most?" and she replied "Uncle."  The prosecutor then followed up with, "Okay.  Cornelius?" and M.H. answered, "Yes, ma'am."  ECF Doc. 19-12 at 72.  At trial, however, M.H. did not seem to remember Cornelius's name.  M.H. was asked if there were any grownups that lived in the house with her Aunt, to which she responded, "That was the dad."  The prosecutor continued with, "Do you remember ever hearing about Cornelius?" and M.H. replied, "No, ma'am."  *Id.* at 73.

Petitioner argued in her state motion, "It was apparent that this child's testimony had evolved over time, and in all likelihood with repeated coaching by the State.  Had Counsel brought this inconsistency before the court it could have placed a reasonable doubt in the minds of the jury of the culpability of the Defendant."  *Id.* The circuit court denied relief on this ground.  Specifically, the court determined the question at the VOP hearing was about who whipped the three-year-old the most; while the question at trial was about which adults lived in the house.  ECF Doc. 19-13 at 41-42.   Thus, it would not have been proper impeachment testimony.

Regardless, there was no prejudice because "[a]mple evidence was submitted that Defendant inflicted injuries upon the . . . children." *Id.*

The state court's rejection of this claim was not contrary to or an unreasonable application of *Strickland* and its progeny. "The decision as to whether to cross-examine a witness is a tactical one well within the discretion of a defense attorney," *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (cleaned up), and counsel is presumed to have acted reasonably. *See* Strickland, 466 U.S. at 690 (discussing the presumption that counsel acted reasonably). Counsel was reasonable in concluding that M.H.'s trial testimony was not inconsistent in any important way from her VOP testimony. In both cases, she identified that an adult male lived with Petitioner. In the VOP testimony, she simply agreed with the prosecutor that he was named Cornelius while during her trial testimony she did not recognize that Cornelius was his name. Also, this inconsistency damages Petitioner's theory that the child was "coached" because, if that were the case, she would have been better able to recall Cornelius's name at the later trial, since he was a co-defendant. Therefore, Petitioner cannot overcome the presumption that her counsel's strategic choice was not deficient performance.

Also, Petitioner cannot show prejudice from the choice not to cross examine M.H. The fact that a 5-year-old witness did not remember one of the household's occupants' names is not of such relevance and importance to discredit her testimony so as to satisfy the *Strickland* standard. The part of M.H.'s testimony that implicated

Petitioner was corroborated by her brother and by Andrea Rogers, who observed her whipping the three-year-old firsthand. As described more fully above, the evidence against Petitioner was strong, and, therefore, even if counsel were to show that M.H. did not remember that Cornelius was the name of the adult male living with her aunt, such impeachment was not reasonably likely to produce a different outcome.

For these reasons, Petitioner is not entitled to habeas relief on Ground Five.

### F. Ground Six: IATC for Failing to Obtain Independent Medical Expert to Testify Regarding Children's Injuries[6]

Petitioner argues counsel should have retained an independent medical expert to rebut the testimony of Dr. Reese about the age of the children's injuries. The circuit court denied relief based on a lack of prejudice. The court concluded Petitioner had proffered nothing more than conclusory allegations that calling a medical expert to rebut Dr. Reese's testimony would have resulted in a different outcome. ECF Doc. 19-13 at 43.

The circuit court's decision was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). Petitioner has not satisfied the prejudice prong of *Strickland* because she has not shown "a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 689.

---

[6] Petitioner does not address Grounds Six or Seven in her Reply.

As the state court found, Petitioner has not demonstrated that another expert would have provided testimony any different from what Dr. Reese offered.  A petitioner seeking an evidentiary hearing must make a "proffer to the district court of any evidence that he would seek to introduce at a hearing."  *Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir. 2006); *see also Drew v. Dep't of Corr.*, 297 F.3d 1278, 1293 n.7 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support.").  Since Petitioner has not demonstrated that an independent expert would provide helpful testimony,  the state court's denial of this claim was not contrary to or an unreasonable application of federal law, and Petitioner is not entitled to habeas relief on Ground Six.

### G.    Ground Seven: IATC for Failing to Object to Testimony of, or properly cross-examine, First Responders Concerning Petitioner's Demeanor

Petitioner argues counsel should have objected to the testimony of the EMTs who arrived to treat the three-year-old or should have cross-examined them more effectively.  As stated above, one of the EMTs (Paul Johnson) testified Petitioner was "calm for the situation", ECF Doc. 19-2 at 153, while another (Kenneth Dane) testified her demeanor was "very calm, not at all hysterical like I would think it would be," *Id.* at 164.  Also, although EMTs told Petition the child had to be rushed to the hospital and she needed to accompany him, Petitioner left the ambulance and

talked on her cellphone and had to be told to get back into the ambulance. *Id.* at 155-56.

Johnson also testified Petitioner told him at the scene that the boy had had a seizure after drinking toilet water, *id.* at 154, but then later told an officer at the hospital that the child had choked on a hotdog. *Id.* at 157. Petitioner argues this evidence was "designed to inflame prejudice and characterize the Defendant as uncaring at the time of her nephew's death." ECF Doc. 1 at 15. She argued in her state motion this "[t]estimony about the Defendant's demeanor was so derogatory that it may have influenced the jury to reach a more severe verdict than it would have otherwise reached. . . . Counsel's failure to object permitted this damaging character reference regarding her demeanor to invade the province of the jury." ECF Doc. 19-12 at 78.

The circuit court denied relief on this ground, finding Petitioner failed to establish either prong of *Strickland.* That is, the state court found Petitioner failed to show "a reasonable probability the results of her trial would have been different but for counsel's failure to object to or cross-examine the witnesses regarding the testimony on Defendant's demeanor. ECF Doc. 19-13 at 44. Also, the state court found "counsel had no basis to object to the testimony and closing argument" as the information was relevant. *Id.*

The undersigned agrees. It is well settled that an attorney cannot be deemed ineffective for failing to raise claims that are "reasonably considered to be without

merit." *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000). Also, questions regarding opinion evidence of the witness's observation of a defendant's mental state are admissible under § 90.701(a), Fla. Stat. Because "it is practically impossible to describe another's appearance in such a manner as to convey to a jury an accurate picture of the emotions shown by him at the time, in criminal cases, a witness may testify" that a person appeared calm. *Shiver v. State*, 564 So. 2d 1158, 1160 (Fla. 1st DCA 1990) (opinion testimony that a person was angry, threating, or "pretty mad" was admissible). Thus, even if counsel objected, the court would overrule the objection because the question was permissible under Florida evidentiary law.

Petitioner also has not established she was prejudiced by counsel's decision to not object to the testimony. While Petitioner's counsel may not have cross-examined the EMTs on this issue, her co-defendant's counsel did. Counsel cross-examined Johnson, making the point that when a person such as the three-year-old is having a seizure, the proper protocol is to give him space rather than to hover over him. ECF Doc. 19-2 at 158. Also, counsel for Petitioner got Johnson to admit he did not know why Petitioner got out of the ambulance or "what was going on with the other children" in the house. *Id.* at 159-60. Counsel later used those admissions to argue at closing she was on the phone not because she was indifferent but, instead, because "[m]aybe she was contacting other family members. Maybe she was trying to help the situation, let people know what's going on, make sure that the kids in the

house have someone to take care of. There was a lot to handle at this situation." ECF Doc. 19-4 at 33. Thus, there would have been no extra benefit to Petitioner for her own counsel to repeat co-counsel's line of examination.

Also, Petitioner can only speculate as to how the witnesses would have answered when asked "if based on their experience it was possible that what was described as 'calm' and 'unconcerned' could have been caused by shock" or "if a person with a personal history of trauma such as the [Petitioner] could have been in a dissociative state." *See* ECF Doc. 1 at 18. "This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'" *See Johnson*, 256 F.3d at 1187. For these reasons, Petitioner is not entitled to habeas relief on Ground Seven.

### H.    Ground Eight: IATC for Failing to Request Continuance Between Trial and Sentencing

Petitioner argues counsel was deficient in failing to ask the court to convene a separate sentencing hearing to allow the defense adequate time to prepare and present mitigating circumstances and prepare witness testimony in support of the Defendant. The circuit court denied relief on this ground for lack of prejudice under *Strickland* because Defendant "fail[ed] to allege which witnesses counsel failed to call and the specifics of the witnesses' testimony and the psychological information Defendant desired counsel to present." ECF Doc. 19-13 at 45. Also, "many witnesses testified on behalf of both Defendant and her co-defendant at the sentencing." *Id.*

The state court's denial was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).  "Evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Petitioner, therefore, cannot obtain relief on his claim.  Petitioner is not entitled to relief on Ground Eight.

## I. Ground Nine: IATC for Failing to Investigate and Present Psychological Mitigating Evidence at Sentencing

Petitioner argues counsel was ineffective by failing to conduct a background investigation or order a psychological evaluation for the purpose of the discovery of mitigating evidence in preparation of the sentencing phase of the proceeding.  ECF Doc. 1 at 17.  In her state motion, ECF Doc. 19-12 at 81-84, Petitioner described a history of trauma, childhood physical and sexual abuse, learning disability and emotional handicap, which the 3.850 judge – the same judge who imposed sentence – discussed and considered in the order denying the 3.850 motion.

The circuit court denied relief on this ground for lack of prejudice under *Strickland,* finding Petitioner failed to show the outcome of her trial would have

been different given the "evidence presented in this case [which] showed that Defendant egregiously abused and neglected the children, especially M.H., age 3." ECF Doc. 19-13 at 46-47.

The undersigned agrees with Respondent that Petitioner cannot overcome the presumption of correctness of the 3.850 judge's finding that the evidence would not have made a difference, especially considering that he was also the same judge that pronounced sentence. "Where the judge presiding over the trial proceedings is the same judge presiding over the post-conviction proceedings, the presumption of correctness afforded the findings of fact of the state court is particularly strong." *Green v. McNeil*, 09-23000-CIV, 2010 WL 3833976, at *10 (S.D. Fla. July 16, 2010), *report and recommendation adopted*, 09-23000-CIV, 2010 WL 3833967 (S.D. Fla. Sept. 30, 2010) (citing *May v. Collins*, 955 F.2d 299, 314 (5th Cir. 1992), cert. denied, 504 U.S. 901 (1992)). Simply put, Petitioner has not come close to providing clear and convincing evidence to rebut the sentencing judge's conclusion that the psychological mitigating evidence would not have convinced him to impose a lower sentence. Thus, Petitioner cannot show attorney error or prejudice and is not entitled to habeas relief on this claim. Petitioner is not entitled to relief on Ground Nine.

**J.    Ground Ten: IATC for Failing to Preserve for Appeal the Issue of Disparate Sentences for Petitioner and Her Co-Defendant**

Petitioner argues counsel should have challenged or preserved for appeal the disparate sentences she and her co-defendant received.  She argues they were equally culpable in the offense, yet her co-defendant was sentenced to only twenty (20) years while Petitioner was sentenced to thirty (30) years.  The circuit court denied relief on this ground because "[m]erely failing to preserve an issue for appellate review is not a sufficient claim of prejudice.  The prejudice in counsel's deficient performance is assessed based upon its effect on the results at trial, not its effect on appeal."  ECF Doc. 19-13 at 47-48 (internal citations omitted).

Respondent argues this claim is not cognizable under § 2254 because the length of the sentence of a convicted criminal under state law, without more, is not a matter of federal constitutional concern.  ECF Doc. 19 at 82-83.  The undersigned agrees.

"In non-capital cases, the Eighth Amendment does not 'require strict proportionality but rather forbids only extreme sentences that are grossly disproportionate to the crime.'"  *Pate v. Warden*, 822 F. App'x 960, 962 (11th Cir. 2020) (quoting *Graham v. Florida*, 560 U.S. 48, 59-60 (2010)).  Petitioner, however, does not argue her sentence was grossly disproportionate to the crime she committed.  Instead, she simply attempts to rely on her "co-defendant's sentence as a yardstick" for her own, which is not a valid basis for federal habeas relief.

A state court's sentencing decision is a discretionary decision based on state sentencing law. If a state judge imposes a sentence that does not exceed the maximum authorized by state law, the judge's application of the state sentencing guidelines is a matter of state law not cognizable in federal habeas proceedings. *See Thomas v. McDonough*, 3:05CV124/MCR/EMT, 2006 WL 3266484, at *11 (N.D. Fla. Nov. 9, 2006), citing *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir.1988).

Thus, courts in this district have consistently denied relief on a claim of disparate sentencing. *See e.g.*; *Myers v. Inch*, No. 3:18CV223-LC/CAS, 2019 WL 4229704, at *18 (N.D. Fla. May 14, 2019), *report and recommendation adopted,* No. 3:18CV223-LC/CAS, 2019 WL 4221396 (N.D. Fla. Sept. 5, 2019) (denying habeas relief on claim based on "disparity between the sentence given Petitioner and the sentence given a codefendant") (citing *Polycarpe v. Sec'y Fla. Dep't of Corr.*, No. 4:08cv439-SPM-GRJ, 2011 WL 6258993, at *9 (N.D. Fla. Oct. 20, 2011); *Atwater v. State*, 781 So. 2d 1149, 1153 (Fla. 5th DCA 2001) (difference in sentencing between co-defendants not unconstitutional because each defendant was situated differently based on their degree of influence and involvement in the conspiracy, their cooperation with the prosecution, and their amenability to be rehabilitated); *Butler v. Sec'y, Dep't of Corr.*, No. 6:13-cv-136-Orl-31GJ, 2014 WL 3721277, at *5 (M.D. Fla. July 28, 2014) ("A defendant cannot rely upon his co-defendant's sentence as a yardstick for his own ....") (quoting *Lakoskey v. United States*, CIV. 07-3581(JNE), 2008 WL 4277714, at *4 (D. Minn. Sept. 15, 2008))).

Petitioner is not entitled to relief on Ground Ten.

### K. Ground Eleven (called a second Ground Ten in the petition): Trial Court Error in Denying the Appellant's Post-Conviction Motion and Not Allowing Leave to Amend

Petitioner argues "[t]he trial court erred in denying the Appellant's post-conviction [motion] and not allowing leave to amend in accordance with Spera." ECF Doc. 1 at 19. As discussed above, this is the same argument she made on direct appeal of the denial of her 3.850 motion.

As Respondent correctly argues, ECF Doc. 19 at 84, Petitioner is not entitled to federal habeas relief on this ground, as it presents only a question of state law. The Eleventh Circuit "has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief." *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009). *See, e.g.*, *Anderson v. Sec'y for Dep't of Corr.*, 462 F.3d 1319, 1330 (11th Cir. 2006); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987). "The reasoning behind this well-established principle is straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—i.e., the conviction itself—and thus habeas relief is not an appropriate remedy." *Carroll*, 574 F. 3d at 1365. *See* Quince, 360 F.3d at 1261-62; Spradley, 825 F.2d at 1568.

Furthermore, "such challenges often involve claims under state law—for example, Florida Rules of Criminal Procedure 3.850 and 3.851, which governs the availability of, and procedures attendant to, post-conviction proceedings in

Florida—and '[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'" *Carroll*, 574 F.3d at 1365 (quoting *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992)). *See also, e.g.*, Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

A claim based on *Spera v. State*, 971 So. 2d 756 (Fla. 2007), a case cited by Petitioner, is a state law claim for which federal habeas relief is not available. *See Dickey v. Jones*, No. 3:16CV657-LC/CAS, 2017 WL 2676538, at *5 (N.D. Fla. May 24, 2017), *report and recommendation adopted*, No. 3:16CV657-LC/CAS, 2017 WL 2672077 (N.D. Fla. June 21, 2017) ("This alleged error does not undermine the legality of his imprisonment and is based purely on state law, specifically Rule 3.850 and the Florida Supreme Court's interpretation of Florida law and procedural rules, including *Spera v. State*, 971 So. 2d 754 (Fla. 2007), and subsequent cases") (citing *Carroll*, 574 F.3d at 1366). Accordingly, Petitioner is not entitled to relief on Ground Eleven.

## IV.   CONCLUSION

### A.   Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations,

which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to

this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.     That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Henderson*, 2012-CF-4865, in the First Judicial Circuit, in and for Escambia County, Florida, ECF Doc. 1, be DENIED without an evidentiary hearing.

2.     That a certificate of appealability be DENIED.

3.     That the clerk be directed to close the file.

At Pensacola, Florida, this 1st day of July, 2021.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.